May it please the court, Lawrence Rolfing on behalf of Anna Marie Phillips. This case involves the question of whether Anna Phillips can take the morphine that her doctors have prescribed to her, and the answer to that question is yes, she can. In fact, the regulations require that she follow prescribed treatment to restore. The cases in the analysis of pain arguments all agree that the failure to follow prescribed treatment is a negative on the credibility of the witness. And once we agree that she can take morphine as prescribed, the question is what can she do if she's taking morphine as prescribed. Her treating physician says that she's limited to less than sedentary and less than full-time work, which would not amount to substantial gainful activity under the commissioner's interpretation of the statute. The medical expert whom the ALJ accepted, Dr. Temple, said that if she's taking morphine and Norco as prescribed, that she would have the capacity for something around sedentary exertion. She was over 50 at the time of the administrative law judge's decision. She takes advantage of the medical vocational guidelines at over 50, and even if she's capable of the full range of sedentary work that doesn't include any of her past work, she's disabled as a matter of law by force of application of the medical vocational guidelines. So everyone agrees that she can't do light work if she's taking morphine, whether she's taking too much morphine or just the morphine that's prescribed. She can't work. Well, I don't know if it's that clear. You could read it saying, well, I mean, you could make this inference, I guess. If she took only the quantity prescribed, right, she would be better off in terms of her, you know, RFC. So is it possible to read the ALJ saying, well, her, you know, her disability is caused by overuse, not, you know, the prescribed use? That's not a fair reading? I don't think that's a fair reading, Your Honor, and here's why. Dr. Temple testified, and this is Volume 2, page 76 of the administrative record. Assuming that the physicians have treated the claimant with morphine, Norco, Vicodin, ES, nortriptyline appropriately, would you expect an individual that's taking that kind of medication on a regular basis to have the capacity to perform what is basically the full range of light exertion that you've described here today? Dr. Temple answered, no. Would you expect them to have a lesser degree of function? Dr. Temple answered, yes, a lesser degree of function, yes. And what would that lesser degree of function be? Answer, possibly she would be at a sedentary level. That's if she took it as prescribed. And we also look at the content of the ALJ's decision. Judge Marcus found that the claimant was disabled because she was abusing morphine. He also later said in his materiality analysis, not that she had to stop abusing, but she had to stop using. She had to stop using the morphine that was prescribed in order to have the capacity for light exertion that Dr. Temple described. She can't stop abusing. She has to stop using. And in fact, the medical evidence is pretty clear that she's been doing exactly what Dr. Temple said that she needed or what her doctors have told her to do. Page 431, which is in Volume 3, the doctor, Dr. Sweeney, says that paragraph 3 of the plan, medications have been stable since October of 2008. And this is in April of 2009. In October of 2009, Dr. Dimitriou is still prescribing morphine. She's been compliant with the morphine plan for in excess of 12 months. The treating physician says that she can't engage in substantial gainful activity. Dr. Temple concedes that she would have a limitation to something in the range of sedentary work. And the fact that she is or has been addicted does not end the analysis. This is where I would appreciate your more detailed analysis because there do seem to be some conflicts in the ALJ's characterization of her usage. At one point, the ALJ basically says if she weren't taking these excessive quantities, then she wouldn't have these side effects. And if she didn't have the side effects, then she would obviously be able to do more. So my question is, if you take as a given that she can take what's prescribed by the doctors, what happens if she takes more than prescribed? How does that fit into the analysis? And are there findings that she in fact is, what do they call it, you know, drug prone or they use a phrase there. Are there findings by the ALJ that she is actually taking more than she's prescribed? The ALJ pointed to one instance in 2007 where she told her doctor that her nephew had stolen her medication. The district court pointed to an instance where after the death of her ex-husband's father, whom she labeled her father-in-law, that she took more morphine or more Norco than had been prescribed. And there are two other instances, four instances out of a period between 2007 and 2009, where there's an odor of using more than what's prescribed. But once we engage on this analysis that we have to engage in the mental fiction of, let's assume for a second that she was actually compliant to every dotted I and every cross T with what her physicians had prescribed to her. What could she still be expected to do if she was absolutely 100 percent compliant? The answer to that question is what the treating physician said or what Dr. Temple said, because that's the evidence. Dr. Temple is what the ALJ relied on. And Dr. Temple said if she's taking the medication that's been prescribed, absolutely as prescribed, she's sedentary. At sedentary, Anna Phillips prevails and she's entitled to benefits as a matter of law by application of the medical vocational guidelines. She is disabled as a matter of law and the rulings are clear on that. If you go that route, then in effect you wouldn't have to, if we would agree with that analysis, then you wouldn't have to get into this analysis about Dr. Dimitri, is that right? If the Court agrees that the way that we attack a drug and alcohol case is, as I described, which I think is in full compliance with the Commissioner's later ruling, 132P, that all of the other issues go away. There isn't any need to address the other issues. Anna Phillips prevails. She's 50 in 2008. She's disabled as a matter of law. In October of 2008, she prevails. And so there isn't a need to do that. And quite frankly, Your Honor, when Anna Phillips testifies, she testifies on the premise and under the assumption that she's using morphine as prescribed. Dr. Dimitri is expressing an opinion about Anna Phillips' ability to function that assumes that she's using morphine as prescribed. So everything hangs on that first predicate. What would her capacity to work look like if she's using morphine as prescribed? Would that also mean that the credibility findings fall out because you're looking at the physician determination? Correct. Correct. The second and third issues just evaporate once we find that she's allowed to follow her doctor's prescriptive advice. And if the court were to find that she's not privileged to accept her doctor's advice and that she's obligated to do as the ALJ said, which is to completely abstain from all narcotic use, principally morphine and Norco, then her testimony and the opinions of Dr. Dimitri would then assume a fact that would not be appropriate to their capacity analysis and their opinions and their perceptions would become legally irrelevant. So everything does hang on whether or not Anna Phillips can follow her doctor's advice. What's the significance of her apparent failure to accept advice with regard to pain management programs that would permit a reduction in the amount of medication she takes? She had declined to accept pain management in 2003 and 2006. But by the time we get to 2007 and 2008 with Dr. Sweeney, she is compliant. The only Dr. Sweeney is the pain management doctor. And the only reason that pain management was suspended in 2009 was not a volitional component. It is that she didn't have transportation to get to pain management on a daily basis. So we have a woman who's taking morphine. I wouldn't want her driving. I don't think anybody wants her driving when she's on morphine. She needs to get a ride. And so she says, I can't get a ride to attend that particular class. And Dr. Sweeney says, well, when you get your transportation taken care of, then we'll restart pain management. So that's not a volitional component. So the failure to follow in the past is colored by where she's at today. In the classic drug and alcohol — It wasn't really the other way around. Where she's at today is colored by the fact that she affirmatively declined in the past. That raises some doubts as to whether she's really interested in doing that or not. The drug and alcohol analysis asks the question, does the person today have the key in their hand that unlocks the door to work activity? The alcoholic that has fried their brain, the person who's fried their brain and body on crystal meth, that comes and says, I'm clean and sober, and the judge says, well, you're a mess because of your history of drug and alcohol abuse. Yeah, but there's nothing I can do about it today. That person is legally disabled because nothing they have the keys to allows them to work in the future. Anna Phillips' history of avoiding pain management while she's working at non-substantial gainful activity levels off and on, she no longer, as of 2008 when she turned 50 or 2007 when she's 49 years of age, she doesn't have the key that allows her to go back to work. That's her drug and alcohol analysis. I don't know that the analogy fits. It's not like she's a burned-out case because of what she did in the past, and now she's clean and ready to go forward. The question is, is she really prepared to use the key? Her past history suggests she doesn't want to use the key. Her past history suggests drug-seeking behavior. That's what the ALJ finds. There seems to be some evidence that supports that proposition. Why isn't there substantial evidence supporting the conclusion that's reached by the ALJ? Because the ALJ, the Social Security ruling clearly states that following medical advice, prescriptive medical advice is not a barrier to the receipt of benefits. And to the extent that the law was unclear or to the extent that any case could be read to the contrary, this Court owes deference to 132P and should apply it. Her doctors have prescribed her morphine, and she's taking morphine as prescribed. In April of 2008, Dr. Sweeney says she's been stable on morphine and been taking it as prescribed for six months. And Dr. Dimitri renews the prescription in October of 2009, fully a year after she turned 50. And this Court should defer to the ruling because it's not plainly erroneous. But I want to give you some rebuttal time when you're down. I appreciate that. But I would like to answer one question on this Social Security 132P. There's sort of the argument made at one point that it's really not inconsistent with prior law so that it does ñ maybe it adds a gloss, but it doesn't change anything. But to the extent that they need to ñ that the LJM needs to make an actual determination that what a claimant is doing is maladaptive use of drugs as opposed to use of prescription as prescribed by the doctor, is that something that we could really make a determination on on appeal, or would that require us to remand? Only because the administrative law judge affirmatively stated that she had to stop using morphine in order to be not disabled, this Court can strike that and find that she is disabled, because of the scope and extent of the ALJ's affirmative finding and consistent use in the materiality, material contribution analysis of the word use. Go ahead.  MS. FEHR. Good morning, Your Honors. My name is Elizabeth Fehr, and I'm representing the Commissioner of Social Security in this case. And I think that the primary question the Court has to answer is whether or not this ALJ properly found that this claimant was abusing her prescription medications. And I think there's plenty of evidence in the record that supports that. The testimony from Dr. Temple is obviously the most important.  TEMPLE. Well, it's not just whether she's abusing, but the question is whether the abuse is what caused her disability or whether the disability was, say, taking the drug as prescribed is also at least a concurrent cause. Is that right? MS. FEHR. I think — TEMPLE. I mean, abuse alone is not the answer, I don't think, in this case. MS. FEHR. I think it is the abuse. What you're saying about the prescribed treatment, I think that's another question, that's another layer to this, is whether or not she was actually taking it as prescribed and whether or not — TEMPLE. Well, the doctor went beyond the prescription, but even if you credit in all the adverse evidence, but that means she took what was prescribed for many, many years. So the ALJ doesn't really inquire into whether, you know, taking morphine for all those years  Right? MS. FEHR. I think it's pretty clear from the record that she's addicted to it. Dr. Lee diagnoses her as opioid-dependent on two occasions. And the new SSR, which is not in effect, wasn't in effect until March 2013, talks about the fact that somebody's addicted to pain medication in and of itself is not a disability. So I would — MS. FEHR. Would you agree that was true before as well? MS. TEMPLE. Probably. I don't think the agency ever actually said that anywhere, but the mere fact that you're addicted to something isn't the primary question. It's what happens when you're engaging in the kind of use you are. And this record here shows that she's taking more medication than she should. And Dr. Temple's testimony is very clear on that. He says — first of all, he questions her subjective complaints based on the very minimal objective evidence in the record, which shows that she has mild to moderate scoliosis. She has some relatively age-appropriate degeneration in her lumbar spine, but she's always — she has normal neurological functioning. She has instances where her pain is more acute than others, but her objective findings do not support the allegations of extreme limitations. DR. WARREN. Well, separate two questions. You're saying — and Dr. Temple did testify — she's taking more than she should. That's not quite the same question as whether she was taking more than she was prescribed. Now, there does appear to be evidence that she took more than was prescribed. But I think those questions are different. Is it — is it fair for her to be held to have abused drugs if, in fact, suppose she took it entirely the way she was prescribed? Dr. Temple might disagree with the doctor's judgment as to how much prescription should be given, but she's still taking it as prescribed. In that case, at least the Social Security ruling would suggest that if it's not maladaptive use, then if it's by prescription, it's okay. Even if Dr. Temple thinks it's too much, it's still by prescription. MS. TEMPLE-RASTON. That's true, but I think that the — the maladaptive use question is — is very important here. It's — well, first of all, this SSR was not in place when the ALJ issued its decision. There was nothing in agency policy that said if you are simply taking medications as prescribed, the analysis ends. And I don't think that SSR intended to carve out a special group of people who are abusing prescription medications just because they've been able to secure prescriptions from their doctors. JUSTICE KENNEDY. No, but it speaks to what — what's it mean to abuse medication if you're taking it as prescribed by your doctor? Can you call that abuse for purposes of denying benefits?  TEMPLE-RASTON. I think you can if you're telling your doctors that your symptoms are more extensive than they really are. JUSTICE GINSBURG. Well, but, no, that seems totally bizarre because if the doctor — you've got to put some credit in the doctor's judgment. So if I say to the doctor, I'm really, really hurting badly, I don't really believe all that. But nonetheless, I'm going to give you this huge dose of morphine. It seems odd to me that the ALJ could second-guess what the doctor prescribed. TEMPLE-RASTON. Well, that's where you go to the maladaptive use. This is someone who's taking more medications than are — than should — than's reasonable for her condition. And if you look at the prescriptions — JUSTICE GINSBURG. So there we have both — both of the doctors are discounted by the ALJ, who says,  TEMPLE-RASTON. JUSTICE GINSBURG. Well, and we — that's supported by a medical expert who's an orthopedic surgeon educated at Columbia. I think it's fair — just because a doctor does something, I don't think there's anything that says the agency has to absolutely accept that as valid. JUSTICE SCALIA. Doesn't the new ruling, you know, accept — the new ruling 13 with a dash 2P, accept as a premise that the claimant is entitled to take the drugs as prescribed? TEMPLE-RASTON. Which — and it wasn't in place at the time the ALJ issued the decision.  JUSTICE SCALIA. Right. TEMPLE-RASTON. That's — our position is that the SSR didn't change the law about drug abuse. If someone who's abusing drugs and but for that abuse would be able to work is not entitled to benefits. That ruling doesn't change that. To the extent it changes anything, it might add a certain level of articulation to an ALJ's decision that wasn't in place at the time that he issued it. It doesn't seem to define what's abuse. I mean, the statute, Congress tries to say we're not going to give benefits to any druggies or alcoholics and so forth. So you start with the statute. But plainly, there's some instances where that's not taken literally. The fetal alcohol syndrome, for example. You're not blaming the little baby for the fact that his mother might have been an alcoholic. So I look at this regulation or this ruling and say, well, it's — among other things, it seems to try to define what's abuse. And it says it's not abuse if you're taking prescription medications taken as prescribed. Now, it's effective March 2013, but that doesn't seem to be a revolutionary concept. It may be more clearly articulated than in the past. But am I wrong in saying that this ruling appears to say it's not abuse if you're taking prescription medication — prescriptive — easy for me to say. It's not abuse if you're taking prescription medications as prescribed. It says that. I absolutely agree with that. What that means — And in this case, we have a woman who's taking prescription medications that were prescribed. There is evidence that she's taking more than she's prescribed. There's also evidence from Dr. Temple that says she's being prescribed too much. Now, the first, the taking too much, would seem to take her out of this provision. But the second would seem not to, because if she's taking it by prescribed, this ruling doesn't appear to open the door for another doctor to come in later and say, well, the abuse consists of the fact she's taking as prescribed because she's found a doctor feel good or she's found somebody who will give her a prescription. This ruling doesn't open the door to second-guessing the doctor's prescription, does it? I think that remains to be seen because it wasn't in place at the time. No court has ruled on it at this point. No, we don't — we're still not seeing ALJ's decisions in court that have played out this new ruling. And as far as your — I just — I don't think it's fair to read this ruling as saying — I know that's what the language says. But it also is in the context of the — of Congress's prohibition against benefits for people who are abusing drugs. It also is in the context of an ALJ having to address the record as a whole. And if — and it also has information in there about maladaptive behavior, which is what the — Let me focus on what the ALJ said, then, because I confess as I've looked at it, I've had different impressions. So let me see if I can understand what your understanding of it is. Is the ALJ in saying — maybe I should turn to what he actually says. If the claimant were not — this is on — I think it's 25. If the claimant were not taking the excessive quantities of medication, levels that Dr. Temple is concerned about, the ALJ in saying that it's — the problem is the abuse. He's speaking of both the excessive beyond-the-prescription amount and the excessive     that Dr. Temple thinks is too much? Yes. I think that's a fair way to read it. Well, is that second part, the part that Dr. Temple thinks shouldn't have been prescribed, what makes that abuse? Well, if you look at the rest of the record, it's — that's where you have to look at the maladaptive behavior. And this record has more than just the four instances when claimants said that she lost her medication or that someone stole it or she had to take more of it for some reason. It also has a lot of evidence about her, as Judge Clifton said, not wanting to do anything except take pain medication. And that's — she was referred to pain management several times. And the most definitive part of the record says she actually never — she only attended four classes. And that was from Dr. Sweeney in August of 2008. He said she only attended four classes. Dr. Dimitri, who is the last doctor of record to have treated her, said on her first occasion, if you don't complete that pain management, I'm not going to give you any more refills. So it's not just — I mean, if you think about a doctor treating someone who is clearly dependent on medications, you can't just stop prescribing them. You have to wean the claimant off. And there were plenty of instances where the doctor said they wanted to do that, but for one reason or the other claimant made that not possible. She said that she — well, I mean, there's just so many instances where Dr. Santa Maria said — claimed it was taking morphine. It was supposed to be temporary. She was supposed to go back to Vicodin. But still, let's assume all that's, you know, true and should be credited. The problem with this — I'll call it ALJ's heavy dependence on the maladaptive behavior analysis is that he doesn't separate or inquire into, well, to what degree is her addiction or drug problems attributable to taking it as prescribed, and to what extent is it, you know, the result of the maladaptive use? And, you know, would she be in the same place without the maladaptive use? He doesn't make that analysis at all. He just accepts what Dr. Temple says. You know, she's been prescribed too much, she's taking what's unnecessary, you know, she's a drug addict. He doesn't try to parse out whether or not she'd still be addicted if she only took the prescribed medicine, right? And she did take it as prescribed. The problem is she went over it, if you credit what the ALJ credited. Well, I don't — first of all, I don't think she took it as prescribed. I don't think that's a fair reading of the record. I think her instances where she tried to get more medication than was — Well, nothing in the record tells you, you know, given the amount of morphine she was prescribed over the years, how much she was taking, that she wouldn't be in the same place where she is now. The reason maybe she started her maladaptive behavior is because the prescribed morphine made her an addict. Well, see, I — We don't know that, do we? Because it's not analyzed. I think — Dr. Temple didn't go into that. I think if you look at the record, if you look at especially our statement of facts, this claimant has always been drug-seeking. She's wanted pain — she's wanted pain medications at the expense of every other kind of treatment that she was offered. Because that's — that is also indicia of addiction, is it not? Well, and maladaptive use. And the other thing is the agency's requirement that a claimant follows treatment is treatment that's supposed to be restorative. If you're taking treatment that's limiting you beyond what your objective impairment should, then that's not restorative treatment. And what claimant was doing here was not restorative treatment. And my time is getting low. So one other thing I wanted to — Let me ask you one thing, which was referenced in the — Ms. Phillips said that, according to Dr. Temple, if she took what she was prescribed and did what she was Actually, I don't agree that that's what Dr. Temple said. I think what Dr. — first of all, that's after Dr. Temple said many things about how he questioned the severity of claimant's complaints. He said her subjective complaints were clearly in excess of the objective medical evidence. He said she's probably being prescribed improperly. He said the record overall suggests she's using more medication than she really should, and that her limitations don't even comport with what he knows of that kind of condition. So when counsel was questioning him, he said, assuming she was treated appropriately, Dr. Temple said, well, she wasn't a couple of times, and then he finally said, okay, I'll assume it was appropriate. And even with that, he said she could do sedentary work, and counsel's incorrect that she would be disabled under sedentary, because the V.E. testified there were transferable skills to two sedentary jobs that would work. So that's not a determinative conclusion, even if what Dr. Temple said about appropriate medication were true. But the upshot of what he does say is that she would be in a sedentary status if she took the medication as prescribed. No, he said if it was appropriate. I think that's a little bit different. And one last thing is the ALJ clearly doesn't say she has to end all use in order to not be disabled, and the passage that Judge Clifton read from page 25 says it was excessive pain medication, not just pain medication. Thank you. Thank you. You've used up all your time, but of course we'll give you a little extra. We asked you a lot of questions. So if you can put two minutes back on the clock. I'll just be incredibly brief. Thank you, Your Honor. Page 22 of the administrative record, volume 1, the ALJ finds at paragraph 14, if the claimant stopped the substance use, she would have the residual functional capacity to, and he describes light exertion. That's his finding, if she stopped substance use. She doesn't have to stop abusing morphine. She has to stop using morphine. And the ALJ is not privileged to second guess the treatment choices of the treating physician. Why doesn't that mean if she stops substance abuse, why doesn't that mean if she wouldn't take more than she's prescribed? Because earlier in making the finding that she was a drug addict, he uses the word abuse, and then when he gets to the materiality finding, he starts using the word use, and I don't know. This is on 24. The undersigned finds nevertheless the claimant's abuse of pain medications is the overriding factor reducing her residual functional capacity disabling levels. And that gets into Dr. Temple's she shouldn't have been prescribed at all. Right. But my point here is that he's not simply saying use. He's not prohibiting use altogether. He says without the abuse, whatever that stands for, she wouldn't be disabled. I agree with you that that's the plain meaning in the context of the enumerated finding at paragraph 14 and the subsequent discussion on page 25. The judge is clearly using the word abuse to include not only overusing, but using as prescribed because he disagrees that she should be prescribed. That's a finding he's not privileged to make. Thank you. I'd like to thank you both for your argument this morning. Case of Phillips v. Commissioner is submitted. We'll adjourn. I know that we have a number of visitors here, and the law clerks will remain here to talk with you about the Ninth Circuit and about clerking, and then we'll return. And just keep in mind that you can't ask us anything, but you may not ask us about today's cases, and you can't ask the law clerks about those cases either. So with that, the Court is adjourned, and we'll be back. Thank you. Thank you. Thank you.
judges: Tashima, McKeown, Clifton